UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

DARNELL BRAXTON,

               Defendant.

**MEMORANDUM AND ORDER**

20-CR-237 (LDH)

LaSHANN DeARCY HALL, United States District Judge:

On July 2, 2020, a grand jury convened in this district returned an indictment against Defendant Darnell Braxton charging him with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant moves pursuant to the Fifth and Sixth Amendments to the United States Constitution, and the Jury Selection and Service Act (the "JSSA"), 28 U.S.C. § 1867(f), to access the records and papers used in connection with the constitution and implementation of the master and qualified jury wheels in the United States District Court for the Eastern District of New York. Defendant also moves pursuant to 28 U.S.C. § 1867(a) to dismiss the indictment on the grounds that the grand jury procedures in this case violated Title 28 of the United States Code.

## BACKGROUND

The grand jury in this case was empaneled on October 10, 2019. Between October 10, 2019, and March 12, 2020, the last day on which the grand jury was able to obtain a quorum prior to the restrictions imposed as a result of the COVID-19 pandemic, the grand jury sat regularly on Thursdays. On March 13, 2020, Chief Judge Mauskopf issued E.D.N.Y. Administrative Order 2020-11, which provided, in relevant part, that "no grand jury ha[d] had a quorum since March 13, 2020." Due to the restrictions imposed as a result of the COVID-19

1

pandemic, the grand jury did not sit between March 13, 2020, and June 10, 2020. On June 11, 2020, the grand jury, sitting in the Central Islip courthouse, achieved a quorum, and heard and voted on the indictment in this case.

## DISCUSSION

The Fifth Amendment to the United States Constitution provides, among other things, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury[.]" U.S. Const. Am. V. Relatedly, the Sixth Amendment guarantees the right to a trial by a jury selected from a fair cross section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 530 (1975) ("We accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation.") Relevant here, the JSSA extends this guarantee to grand juries, thereby entitling defendants to be indicted by a grand jury selected at random from a fair cross section of the community. 28 U.S.C. § 1861; 28 U.S.C. § 1867(a)–(b), (d). In enacting the JSSA, Congress sought to "assure all litigants that potential jurors will be selected at random from a representative cross section of the community and that all qualified citizens will have the opportunity to be considered for jury service." *United States v. Miller*, 116 F.3d 641, 656 (2d Cir. 1997) (quoting H.R. Rep. No. 90–1076 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1792, 1792).

Where a defendant believes this right may have been violated, the JSSA entitles him to inspect records used in connection with the grand jury selection process to determine whether he wishes to challenge the indictment. *Test v. United States*, 420 U.S. 28, 30 (1975) (per curiam) (stating that a party has an "unqualified right to inspect jury lists," in order to "aid parties in the

'preparation' of motions challenging jury-selection procedures."). To this end, the JSSA provides, in relevant part, that:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation of a motion [to dismiss the indictment on the ground of substantial failure to comply with jury selection procedures] . . . . The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.

28 U.S.C. § 1867(f). Notably, the Second Circuit has advised that the JSSA's grant of access to documents "used" by the administrators in the grand jury selection process, "plainly give a defendant access only to records and papers already in existence." *Miller*, 116 F.3d at 658.

Defendant contends that the unusual circumstances surrounding the return of the indictment may have compromised his right to be charged by a grand jury selected from a fair cross section of the community because the grand jury sat in Central Islip as opposed to Brooklyn at a time when most members of the public in the Eastern District of New York were still ordered to remain at home, except for limited categories of activity, to prevent the spread of COVID-19. That said, "[b]ecause the right of access to jury selection records is 'unqualified,' a district court may not premise the grant or denial of a motion to inspect upon a showing of probable success on the merits of a challenge to the jury selection provisions." *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996) (citing *Test*, 420 U.S. at 30).

Defendant seeks access to 23 categories of records related to the grand jury selection process:

1. The Jury Plan for the Eastern District of New York currently in effect and, if different in any respect, at the time grand jurors were summoned in this case. This Plan is believed to be the "Jury Selection Plan (As amended October 30, 2006)" effective October 30th, 2006.

3

2. A description of any changes from the previous procedures or from the Jury Plan for the grand jury or creation of the grand jury because of the COVID-19 pandemic.

3. Any order of the Court that effects the previous procedures or the Jury Plan for the grand jury or creation of the grand jury because of the COVID-19 pandemic.

4. A description of work done, contact information, and communications with any vendors in the creation of the Master and Qualified Jury Wheels used to summon grand jurors in this case.

5. A confirmation that the grand jury in this case was selected from the entire District or, if not, a description of the basis and selection for the grand jury in this case.

6. Any AO-12 form or JS-12 form created which relates to the Master Jury Wheel and Qualified Jury Wheel that were used to summon the grand jurors who returned the indictment in this case as required by 28 U.S.C. § 1863(a).

7. Any other statistical or demographic analyses produced to ensure the quality and compliance of the Master Jury Wheel and Qualified Jury Wheel that were used to summon grand jurors in this case with the Jury Plan (especially Section 2), Jury Selection and Service Act and constitutional requirements.

8. The date when the Master Jury Wheel that was used to summon grand jurors in this case was refilled as described in the Jury Plan Section 5.

9. The calculation of proportional representation of counties in the Master Jury Wheel described in the Jury Plan Section 4.

10. The procedures implemented for prospective jurors who do not respond to a juror qualification form or have their juror qualification form returned from the Postal Service as undeliverable.

11. The number of persons who failed to return a completed juror qualification form as described in the Jury Plan Section 6.

12. The number of persons who failed to return a completed juror qualification form and who were summoned by the clerk to appear before the clerk to fill out a juror qualification form as described in the Jury Plan Section 6.

13. The date when grand jurors were summoned in this case.

14. The number of persons summoned from the Qualified Jury Wheel to be considered as grand jurors in this case.

15. The Master Jury Wheel data as described in the Jury Plan Section 5 in electronic and accessible form that includes Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County and Jury Division.

16. The Qualified Jury Wheel data as described in the Jury Plan Section 11 in electronic and accessible form that includes Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County and Jury Division.

17. Status Codes for potential jurors who were selected from the Master Jury Wheel for qualification who either had their qualification form returned by the postal service, did not respond or were disqualified or exempted from jury service as described in the Jury Plan. The data should be in electronic and accessible form that includes Juror Number, whether the form was returned Undeliverable, whether the form was not returned, Reason for Disqualification, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division.

18. The Juror Number only (and not Name or Street Address) for persons who failed to return a completed juror qualification form and who were summoned by the clerk to appear before the clerk to fill out a juror qualification form as described in the Jury Plan Section 6.

19. The Juror Number only (and not Name or Street Address) for persons selected as potential grand jurors in this case.

20. The source of data in electronic form for the Master Jury Wheel used to summon grand jurors in this case as described in the Jury Plan Section 4 (voter registration list and list from the New York State Department of Motor Vehicles). The data should include, as available, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division but not any personal information or information that could be used to identify any individual such as Name or Street Address.

21. The juror qualification and summons forms for persons summoned to potentially become grand jurors in this case.

22. The disposition of each summoned potential grand juror in this case as to excusal, deferment, disqualification or selection as described in the Jury Plan.

23. The attendance record and reason for absence by date for each grand juror.

By way of background, the grand jury selection process in this district is managed by the Clerk of the Court. E.D.N.Y. Jury Selection Plan § 3 (available at https://img.nyed.uscourts.gov/files/local_rules/juryplan.pdf.) At the start of the process, names

5

of potential grand jurors are "selected at random from the voter registration lists of all the counties within the Eastern District of New York supplemented by lists for these counties from the New York State Department of Motor Vehicles." *Id*. § 4.  From these lists, the Clerk of Court establishes a master jury wheel composed of "the names of all persons randomly selected from the combined source lists of all the counties of the Eastern District." *Id*. § 5.  The Clerk of Court then removes from the master jury wheel all persons deemed ineligible for, or exempt or excused from jury service, resulting in a qualified jury wheel.  *Id*. § 11.  Jury venires are selected at random from the qualified jury wheel to serve on grand juries.  *Id*. § 13.

The Government contends that Defendant is entitled only to records reflecting demographic information including the county of residence, zip code, race, and age of all individuals listed in the master jury wheel because those records alone are sufficient to allow Defendant to determine whether he wishes to move to dismiss the indictment in accordance with the JSSA.[1]  The Court disagrees.

In this case, Defendant requires more than just the demographic information relating to the master jury wheel.  In this district, the jury selection process does not stop at the creation of a master jury wheel.  Grand jurors are summoned only after the Clerk of Court deems them eligible and not otherwise exempt or excused from service, and places them in the qualified jury wheel.  These processes impact, and potentially infect, the grand jury selection process, the visibility into which is necessary for a defendant to determine whether his rights under the JSSA have been impaired.  Indeed, courts in this district have similarly found that defendants are entitled to records beyond those detailing the demographics of the jurors included in the master

---

[1] The Court notes that, on this basis, the Government concedes that Defendant is entitled to the records requested in Requests No. 15 and 20.  Accordingly, in addition to any bases set forth below, the Court grants Defendant's Requests No. 15 and 20 as unopposed by the Government.

6

jury wheel. *See United States v. Corbett et al.*, 20-cr-213 (KAM) (E.D.N.Y. Aug. 21, 2020), at 7–8, ECF No. 85 ("The court . . . finds that the Master Jury Wheel provides both the most expansive and the least specific information upon which to determine if the Eastern District's current grand jury procedures comply with the JSSA."); *United States v. Shader*, 20-CR-202, 2020 WL 4158059, at *4 (E.D.N.Y. July 17, 2020) (granting access to the demographics of the individuals listed in the source lists [the voter registration list and the New York State Department of Motor Vehicles list] and in the Master Jury Wheel from which the Grand Jury was selected).

That said, a defendant is not entitled to inspect every record that may touch upon the grand jury process. Defendants are only entitled to those records which bear on a potential motion to dismiss the indictment. For example, the parties agree that defendants are not entitled to any personal identifying information for the individuals listed in the records requested, including, but not limited to names, addresses, telephone numbers, full dates of birth, and social security numbers. Moreover, because the grand jury here was empaneled months before the start of the COVID-19 pandemic, any changes made to address the effect of the pandemic on the current grand jury selection process is irrelevant to any potential motion by Defendant. *See Shader*, 2020 WL 4158059, at *4 (denying requests that sought information as to the impact of COVID-19 on the Jury Plan). Accordingly, Defendant is not entitled to the records described in Requests No. 2 and 3. Similarly, any information related to prospective jurors who fail to respond to or return juror qualification forms could not inform a motion to dismiss an indictment as violative of the JSSA because "the Sixth Amendment guarantees the *opportunity* for a representative jury venire, not a representative venire itself," *United States v. Jackman*, 46 F.3d 1240, 1244 (2d Cir. 1995), and thus, "[i]t is not the actual selection of the grand jury which

7

would constitute the violation but whether the jury was selected at random from a fair cross section of the community," *United States v. Gotti*, No. S4 02-CR-743 (RCC), 2004 WL 32858, at *11 (S.D.N.Y. Jan. 6, 2004). On this basis, Defendant is not entitled to records described in Requests No. 10, 11, 12, and 18. Further, it should be obvious that once a grand jury is empaneled, the attendance of grand jurors is also irrelevant. Defendant is therefore not entitled to records described in Request No. 23. Finally, the Court declines to grant Requests No. 4 and 5 because they exceed the scope of the JSSA, which only contemplates the production of "records and papers already in existence." *See Miller*, 116 F.3d 641 at 658. Against this backdrop, the Court grants Defendant's motion with respect to Requests No. 1, 6, 7, 8, 9, 13, 14, 15, 16, 17 (as modified below), 19, 20, 21, and 22.

## CONCLUSION

For the foregoing reasons, Defendant's motion to inspect grand jury records is GRANTED, in part; and DENIED, in part.[2] The Clerk of Court, as the custodian of the grand jury records, shall provide to defense counsel and the Government, as soon as practicable, but no later than twenty-one (21) business days from the date of this order, the grand jury records set forth below to the extent that they are already in existence.

1. The Jury Plan for the Eastern District of New York currently in effect and, if different in any respect, at the time grand jurors were summoned in this case. This Plan is believed to

---

[2] The Court denies Defendant's request to convene a teleconference with the EDNY Jury Administrator so that the parties and the Court may learn what records are available because the request is unnecessary to deciding the instant motion.

8

be the "Jury Selection Plan (As amended October 30, 2006)" effective October 30th, 2006.

6. Any AO-12 form or JS-12 form created which relates to the Master Jury Wheel and Qualified Jury Wheel that were used to summon the grand jurors who returned the indictment in this case as required by 28 U.S.C. § 1863(a).

7. Any other statistical or demographic analyses produced to ensure the quality and compliance of the Master Jury Wheel and Qualified Jury Wheel that were used to summon grand jurors in this case with the Jury Plan (especially Section 2), Jury Selection and Service Act and constitutional requirements.

8. The date when the Master Jury Wheel that was used to summon grand jurors in this case was refilled as described in the Jury Plan Section 5.

9. The calculation of proportional representation of counties in the Master Jury Wheel described in the Jury Plan Section 4.

13. The date when grand jurors were summoned in this case.

14. The number of persons summoned from the Qualified Jury Wheel to be considered as grand jurors in this case.

15. The Master Jury Wheel data as described in the Jury Plan Section 5 in electronic and accessible form that includes Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County and Jury Division.

16. The Qualified Jury Wheel data as described in the Jury Plan Section 11 in electronic and accessible form that includes Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County and Jury Division.

17. Status Codes for potential jurors who were disqualified or exempted from jury service as described in the Jury Plan. The data should be in electronic and accessible form that includes Juror Number, Reason for Disqualification, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division.[3]

19. The Juror Number only (and not Name or Street Address) for persons selected as potential grand jurors in this case.

20. The source of data in electronic form for the Master Jury Wheel used to summon grand jurors in this case as described in the Jury Plan Section 4 (voter registration list and list

---

[3] Defendant requests "Status Codes for potential jurors who were selected from the Master Jury Wheel for qualification who either had their qualification form returned by the postal service, did not respond or were disqualified or exempted from jury service as described in the Jury Plan. The data should be in electronic and accessible form that includes Juror Number, whether the form was returned Undeliverable, whether the form was

9

    from the New York State Department of Motor Vehicles).  The data should include, as available, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division but not any personal information or information that could be used to identify any individual such as Name or Street Address.

21.    The juror qualification and summons forms for persons summoned to potentially become grand jurors in this case.

22.    The disposition of each summoned potential grand juror in this case as to excusal, deferment, disqualification or selection as described in the Jury Plan.

The records produced shall be subject to a protective order to be proposed by the parties no later than five (5) days from the date of this order.

                \*      \*      \*

Defendant's motion to dismiss the indictment is DENIED without prejudice, with leave to renew after inspection of the produced records.

SO ORDERED.

Dated: Brooklyn, New York
       October 15, 2020

/s/ LDH
L&#42790;SHANN D&#42792;ARCY HALL
United States District Judge

---

not returned, Reason for Disqualification, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division." As the Court held, *supra*, information regarding prospective jurors who fail to respond to or to return juror qualification forms could not inform a motion to dismiss an indictment as violative of the JSSA. Accordingly, Defendant is not entitled to status codes for potential jurors who were selected from the master jury wheel for qualification who either had their qualification form returned by the postal service or did not respond.